## SUPREME COURT — APPELLATE DIVISION — FIRST DEPARTMENT.

### December 2, 1921.

## THE PEOPLE v. DAVID FRANKLIN ET AL.

### (198 App. Div. 712.)

PENAL LAW, § 2354, PROHIBITING SALE OF MERCHANDISE BEARING IMITATION TRADEMARK DOES NOT PRECLUDE PERSON OR FIRM FROM DOING BUSINESS UNDER OWN NAME AND FROM USING APPROPRIATE LABELS—CONVICTION UNWARRANTED WHERE THERE IS NO CRIMINAL INTENT AND EVIDENCE FAILS TO DISCLOSE DECEPTION.

The sale by the defendants of shirts bearing a trademark consisting of their firm name, ''Franklin, Simon & Co., New York,'' similar to the trademark used by the corporation Franklin Simon & Co., is not a violation of section 2354 of the Penal Law, making it a misdemeanor knowingly to sell merchandise to which is affixed a false or counterfeit trademark of another, without the latter's consent, where it appears that there was no evidence of any criminal intent on the part of the defendants nor that they attempted to copy or imitate the label of the corporation; nor that the public was deceived or would be deceived thereby, since a lawful firm name may be adopted as a trademark and persons are not precluded from using labels appropriate to show that they are manufacturers of their own goods.

DOWLING, J., dissents.

APPEAL by the defendants, David Franklin and another, from a judgment of the Court of Special Sessions of the City of New York, entered in the office of the clerk of said court on the 26th day of July, 1920, convicting them of a violation of section 2354 of the Penal Law.

*Edwards, Murphy & Minton (John McKim Minton, Jr.,* of counsel), for the appellants.

*Edward Swann, District Attorney (Robert D. Petty,* of counsel), for the respondent.

LAUGHLIN, J.:

The defendants were tried and convicted on an information accusing them of a violation of section 2354 of the Penal Law in selling on the 30th day of April, 1920, shirts to which, it is charged, was attached an imitation of the trademark of another without its consent. Subdivision 3 of said section, under which the conviction was had, provides, so far as here material, that a person who " Knowingly sells, or keeps or offers for sale, an article of merchandise to which is affixed a false or counterfeit trademark, or the genuine trademark, or an imitation of the trademark of another, without the latter's consent; * * * Is guilty of a misdemeanor * * *." The charge here is that defendants sold the shirts with an imitation of the trademark of " Franklin Simon & Co., New York," the well-known house on Fifth avenue at the southwest corner of Thirty-eighth street, affixed to each. Section 2350 of the Penal Law, so far as applicable here, defines a " trademark " as " a mark used to indicate the maker, owner or seller of an article of merchandise, and includes, among other things, any name of a person, or corporation, or any letter, word, device, emblem, figure, seal, stamp, diagram, brand, wrapper, ticket, stopper, label or other mark, lawfully adopted by him, and usually affixed to an article of merchandise to denote that the same was imported, manufactured, produced, sold, compounded, bottled, packed or otherwise prepared by him;" and section 2353 defines an " imitation of a trademark " as " that which so far resembles a genuine trade-mark as to be likely to induce the belief that it is genuine, whether by the use of words or letters, similar in appearance or in sound, or by any sign, device or other means whatsoever." At the time specified in the information the defendants and another were engaged as copartners under the firm name of Franklin, Simon & Co. in manufacturing and selling men's shirts at room 207 in the building known as 32 Union square, borough of Manhattan, New York. They used on the shirts manufactured and sold by them a label as follows:

" Franklin, Simon & Co., New York," which was their firm name. The surname of one of the members was Franklin and of another Simon and the third was represented by " & Co." One Baldwin, an employee of the corporation Franklin Simon & Co., testified that it had been engaged, among other things, in manufacturing and selling men's shirts, using as a label its corporate name, viz., " Franklin Simon & Co., New York," for upwards of eight years, and that he called at the defendants' place of business and purchased two shirts having thereon the label, " Franklin, Simon & Co., New York," but that no representation was made with respect to the defendants having any connection with the corporation. He and another employee of the corporation also testified that its label was in old English script with " the block type for New York," and that the only difference between it and the label used by the defendants was the comma between the names Franklin and Simon in the defendants' label. The defendants' label, however, was printed, and it appears from an exhibit in the case that the label of Franklin Simon & Co. was woven; and although there is some confusion in the evidence with respect to the color of the label of the corporation, arising from the introduction in evidence of a label in its name woven in red, still the preponderance of of the evidence shows that the print or weave of the labels on the shirts of both the defendants and the corporation was black. The defendant Simon testified that when Baldwin called, he stated that he had seen one of the defendants' circulars and would like to buy some shirts; whereupon Simon asked if he wanted Jersey silk, and thereupon Baldwin inquired whether the defendants had any connection with the Fifth avenue store, and he replied in the negative and stated that the defendants manufactured their own shirts and, in effect, could sell cheap, and that they did not make a practice of selling to the retail trade, and quoted prices which Baldwin said were cheap, and that he sold two shirts to Baldwin and, at his request, gave him a receipted bill therefor, bearing the heading, " Franklin,

Simon & Co., Jobbers in Shirts and Ties, 32 Union Square (Room 207)." The defendant Franklin testified that when Baldwin asked whether they had any connection with the Fifth avenue house, Simon replied that they were individuals and the Fifth avenue house was a corporation; and Baldwin admitted that Simon so stated. He also testified that years ago he and Simon followed the circuses, selling lemonade, for about ten years, and that before that he was a taxicab driver, and that the defendants engaged in manufacturing and selling shirts about four months before the trial, which was on June 4, 1920; that when the defendants formed the copartnership he consulted a lawyer with respect to whether they could use the name Franklin, Simon & Co., and they were advised that they were at liberty to use their own names; but that when they attempted to file their copartnership articles in the county clerk's office, they were rejected; that he had known the corporation Franklin Simon & Co. only as a ladies' department store and not as a gents' furnishing store; that when they ordered the printing of their labels, they gave the printer their business card showing their firm name in old English script. On cross-examination he testified that in addition to selling shirts at their place of business they sold them along Broad street and Wall street, but that they sold them by asking people whether they wanted to buy shirts and not by showing the labels. The defendant Simon testified that when they ordered the labels, the printer advised them that every other house used the old English script and the block type for " New York," and the defendants informed him they would use the same; that the first they had heard that it was claimed that their label resembled that of the corporation Franklin Simon & Co., was when they were called to the district attorney's office on the twenty-eighth of April, about a week before the prosecution was instituted, and that they were not then advised to discontinue using their labels. The printer who printed the labels for the defendants testified that the order was given by the defendant Franklin, who showed

him the defendants' business card and instructed him to use
the same type as that on the card, and that nothing was said
about the corporation Franklin Simon & Co.

I am of opinion that the conviction was not warranted by
the evidence.   There is no evidence of any criminal intent on
the part of the defendants; or that, in providing a label for
goods of their own manufacture, they attempted to copy or
imitate that of the corporation Franklin Simon & Co.; or that
any one was deceived by the label used by the defendants, or
would be; or that it was likely that the public would be deceived
or was liable to be deceived thereby.   In construing these pro-
visions of the Penal Law it must be borne in mind that they
recognize that an individual's name may become his trade-
mark.   I am of opinion that the Legislature did not intend to
prohibit people from engaging in business under their own
names, and did not intend to preclude them from using labels
appropriate to show that they were the manufacturers of their
own goods.   The same is true, I think, with respect to a lawful
firm name, as was the firm name adopted by the defendants.
There is no evidence that the defendants were aware that it was
claimed that their label was an imitation of the trademark label
of the corporation Franklin Simon & Co., until they were sum-
moned to the office of the district attorney two days prior to
the sale on which the conviction was predicated; and I am of
opinion that they were not then required to discontinue the use
of their label.   Assuming that their testimony, which is not
controverted, is true, they did not sell goods with the label
affixed knowing that it was an *imitation* of the trademark of
another, for it was not such an imitation, but on the contrary
was their true and lawful firm name and only so intended.   The
record is barren of any evidence that this label so far resembled
the trademark label of the corporation Franklin Simon & Co.,
as to be likely to induce the belief that it was the genuine label
of the corporation.   It does not appear that shirts are sold
according to the labels they bear.   Surely no one purchasing

of the defendants at their place of business would be misled into believing that he was buying shirts manufactured by the corporation Franklin Simon & Co., and it does not appear that the corporation is or has been selling shirts on Broad or Wall street, or elsewhere than at its place of business.

It follows that the judgment should be reversed and the defendants discharged.

CLARKE, P. J., PAGE and MERRELL, JJ., concur; DOWLING, J., dissents.

Judgment reversed and defendants discharged. Settle order on notice.

## NOTE ON SECTION 2354, PENAL LAW, FALSE OR COUNTERFEIT TRADEMARK.

The imitation of a trademark with a design to deceive the public, and which is liable to deceive them and enable the imitator to pass off his goods as those of him whose trademark is imitated, is a fraud upon the latter and false representation to the public. (Popham v. Code, 66 N. Y. 69.)

The intention of the Legislature to thoroughly protect both the public and the owner from the further use of trademarks in any way is shown in the language of this section. (People v. Luhrs, 195 N. Y. 377.)

So far as unregistered trademarks are concerned there may be a prosecution under this section based on counterfeiting the trademark of a foreign manufacturer. (People v. Maems, 7 N. Y. Crim. 51.)

To constitute one guilty of a violation of subdivision 1, the act must be done with a fraudulent or criminal intent; so that a printer who ignorantly prints counterfeit labels from plates furnished him by the real offender is not guilty of the offense. (People v. Bruno, 164 App. Div. 32.)

One who counterfeits a union label and affixes it to goods without authority is liable under this section. (People v. Fisher, 50 Hun, 552.)

But it is no offense to use a union label on goods, claiming it to be a true union label, where it does not represent the true union label and is not a counterfeit of it. (Smed v. Bernard, 31 Misc. 35.)

The counterfeit of a union label has been held in one case, however, not to fall within this section. (People v. Streep, 126 N. Y. S. 172.)

One who prints counterfeit labels is liable under this section though the

person for whom the same were printed was employed to do so by an agent of the owner of the trademark for the purpose of detecting the crime, who apparently also designed to commit a crime. (People v. Kiwinsky, 168 N. Y. 182.)

A wholesaler who sells to a retailer goods bearing a counterfeit label violates subdivision 3, even though the latter is informed of the fraud. (People v. Helfman, 61 App. Div. 541.)

One who refills a gas tank bearing the name Prest-o-lite with gas of another concern is guilty though he attaches a paper paster stating the true manufacture, easily removable. (Prest-o-lite v. Ray, 147 N. Y. S. 219.)

Subdivision 6 prohibits the sale of goods represented to have been made by the owner of a trademark, except as contained in the original package and as put up by him under his label. (People v. Luhrs, 195 N. Y. 377.)

The purpose of this subdivision "evidently was to protect the owners of trademarks by making it a crime to sell or offer or expose for sale goods covered by a trademark owned by another unless the goods when sold or offered or exposed for sale were contained in the package in which they were put up by the manufacturer and had thereon the labels, marks, or names constituting the trademark by which the manufacturer desired the goods to be known and introduced." (People v. Hoffheimer, 100 App. Div. 423.)

Under that subdivision a furniture salesman cannot be deemed guilty of an offense in selling a couch covered with a material represented by him as pantasote, which is a material protected by a trademark, where the material bears no trademark or label and the salesman is not known to have known that the material was not pantasote. (People v. Hoffheimer, 110 App. Div. 423.)

A conviction under this section for selling spurious water from bottles bearing a trademark sustained. (People v. Blako, 121 App. Div. 613.)

A salesman in a haberdashery store cannot be convicted of misdemeanor for knowingly exposing for sale articles of merchandise which he is alleged falsely to have represented to be "Manhattan" shirts, contrary to subdivision 8, merely upon proof that there was displayed in the window a card bearing the word "Manhattan" placed against shirts exposed for sale, where the proof shows that when questioned by a customer he stated that they had no Manhattan shirts, and he had no part in dressing the window or placing the sign, and the proprietor of the store testifies that at the time he actually had "Manhattan" shirts in his store for sale. (People v. Goldstein, 175 App. Div. 503.)